UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X        Index No.:   1:24-cv-00545
CLARE LEE,

                             Plaintiff,

            -against-                                                                          **COMPLAINT**

THE BOARD OF EDUCATION OF THE CITY OF NEW
YORK and/or THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK and JEFFREY BRISARD,
individually,                                                                     Plaintiff Demands A
                                                                                        Trial by Jury

                             Defendants.
-------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the

Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1.    This is a case about the assistant principal of a high school who exploited his position to

      sexually harass a female subordinate.

2.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

      §2000e et seq. ("Title VII"), as well as the New York Executive Law, and the Administrative

      Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant

      to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries

      Plaintiff has suffered as a result of being harassed and discriminated against by her employer

      on the basis of her sex/gender, together with creating a hostile work environment, sexual

      harassment, and retaliation.

### JURISDICTION AND VENUE

3.    The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq., 28 U.S.C. §1331, §1343, and

      supplemental jurisdiction thereto.

4.     This action involves a Question of Federal Law.

5.     Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

6.     On or about August 2, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.     On or about January 25, 2024, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

8.     This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

**PARTIES**

9.     Plaintiff is an Asian, female resident of the State of New York, County of Kings.

10.    At all times material, Defendant THE BOARD OF EDUCATION OF THE CITY OF NEW YORK AND/OR THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (hereinafter "NYCDOE") was and is a department, agency, and/or subdivision of The City of New York, charged with operating public schools in New York City.

11.    At all times material, Defendant JEFFREY BRISARD (hereinafter "BRISARD") was and is the "Assistant Principal of Programming and Technology" at Defendant NYCDOE's Fort Hamilton High School, which is located at 8301 Shore Rd, Brooklyn, NY 11209.

12.    At all times material, Defendant BRISARD was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

13.    Defendant NYCDOE is vicariously liable for the conduct of their employees, agents, managers, supervisors and/or representatives, including Defendant BRISARD.

14.    Defendant THE CITY OF NEW YORK and Defendant BRISARD are hereinafter also

collectively referred to as "Defendants."

15.  At all times material, Plaintiff was and is an employee of Defendants.

## **MATERIAL FACTS**

16.  In or around 2014, Plaintiff began working for Defendant NYCDOE as a "Math Teacher," with an annual salary of $48,000.

17.  Throughout her employment, Plaintiff was a dedicated and reliable teacher, who performed all of her duties without issue.

18.  In fact, over the next several years, based on her strong performance, Plaintiff received multiple raises, and her current annual salary is $97,469.

19.  However, Plaintiff's work environment drastically changed in 2022 when Defendant BRISARD started to subject her to an incessant campaign of sexual harassment.

20.  By way of background, as Assistant Principal of the Programming and Technology ("P&T") Department, Defendant BRISARD was responsible for the computer infrastructure and information technology functions ("IT") at Fort Hamilton High School.

21.  As such, many teachers have to interact with Defendant BRISARD when they need tech support, or have issues uploading assignments to the school's online web portal.

22.  Nevertheless, in or around January 2022, Defendant BRISARD called Plaintiff into his office and told her that he wanted to show her a "funny video."

23.  However, to Plaintiff's surprise, this "funny video" depicted a **naked woman spreading her legs**, **and getting a tattoo on her vagina**.

24.  Plaintiff became incredibly uncomfortable, told Defendant BRISARD that the video was "disgusting," and abruptly left his office.

25.  In further harassment, from February 2022 to March 2022, **Defendant BRISARD constantly**

3

**called Plaintiff into his office and asked her to massage his shoulders**.

26.   Initially, Plaintiff did not suspect Defendant BRISARD's ulterior sexual motive, so she complied at Defendant BRISARD's insistence.

27.   However, overtime, Defendant BRISARD's requests for shoulder massages became more persistent, and Plaintiff grew alarmed.

28.   Therefore, Plaintiff started declining Defendant BRISARD's requests for massages altogether, and even sent Defendant BRISARD a link to an electronic massager from Amazon.Com so that he would stop making such requests.

29.   As another example, Defendant BRISARD regularly asked Plaintiff intrusive questions about her fitness routine and weight loss.

30.   For instance, on one occasion, **Defendant BRISARD told Plaintiff that the only way he would be able to tell if she lost weight was to see her naked**.

31.   Specifically, Defendant BRISARD stated, "**I need to see it myself to know how much [weight] you lost without *those* [clothes]**."

32.   Plaintiff ignored Defendant BRISARD's lewd comment and walked away.

33.   Naturally, Plaintiff was disturbed by Defendant BRISARD's pervasive harassment.

34.   However, Plaintiff did not immediately complain because she was intimidated by his tenure and position at Defendant NYCDOE, and did not want to "strip the pot."

35.   As a result, the sexual harassment continued, and escalated.

36.   For example, in or around April 2022, Plaintiff was walking down a hallway when she ran into Defendant BRISARD, who proceeded to ask her to go into an adjacent (empty) room with him. Given his recent behavior, Plaintiff was apprehensive about entering the room alone with Defendant BRISARD.

37.  However, Plaintiff reluctantly acquiesced because at 6'3" and 300 pounds, Defendant BRISARD was physically imposing, and she feared that refusing might result in retaliation.

38.  Then, once they entered the room, **Defendant BRISARD sat next to Plaintiff and placed his hand on her upper thigh**.  Plaintiff flinched, moved away from Defendant BRISARD, and tried to divert his attention elsewhere by inquiring about a job opening for a "Program Assistant" position in the P&T Department.

39.  Defendant BRISARD told Plaintiff that while the position did not offer an increase in compensation, if she applied for the position, and was hired, Plaintiff would be able to work in the P&T Department two periods a day, assisting with the school's IT functions.

40.  This meant that as opposed to teaching five classes per day, Plaintiff would have to teach three. Plaintiff would also learn how to use a myriad of computer programs, which would make her a more marketable job candidate in the future.  Furthermore, every Program Assistant in the P&T Department had their own desk, which was also enticing to Plaintiff because like most teachers at the high school, she did not have one.

41.  Therefore, Plaintiff told Defendant BRISARD that she was interested in the position and started to exit the room.

42.  However, before she could leave, Defendant BRISARD asked Plaintiff for **another massage**. Plaintiff refused.  Defendant BRISARD then told Plaintiff that they needed to "**hang out soon**."  Plaintiff awkwardly replied, "okay," and left the room.

43.  Plaintiff had no intention of "hanging out" with Defendant BRISARD, but implied that she would for fear of retaliation.

44.  Consequently, Defendant BRISARD continued to sexually harass and proposition Plaintiff in the workplace.

45.   For example, on or about June 14, 2022, Defendant BRISARD approached Plaintiff and asked her to "**hang out**" with him after work.

46.   Plaintiff declined, telling Defendant BRISARD that she was "busy and [did] not have time." However, determined to flaunt his apparent authority, his "untouchable status," and/or to intimidate her into reciprocating his sexual advances, Defendant BRISARD maliciously stated, "**You will never get the [Program Assistant] job!**"  Plaintiff replied, "Fine, whatever, give it to someone who can satisfy your needs," and walked away.

47.   Significantly, through his actions, Defendant BRISARD attempted to condition the Program Assistant position upon Plaintiff's submission to his sexual advances.

48.   Defendant BRISARD also knew that Plaintiff was interested in the Program Assistant position, and held this "over her head" in order to discourage her from complaining about his unlawful touching/sexual harassment.

49.   Nevertheless, later that month, Plaintiff interviewed for the Program Assistant with Defendant BRISARD and Fort Hamilton High School's Principal, Kaye Houlihan.

50.   That same week, Defendant BRISARD and Ms. Houlihan notified Plaintiff that she had been hired/selected for the Program Assistant position.

51.   Plaintiff was excited about this opportunity; however, she was also apprehensive about having to spend two class periods a day in the P&T Department, which was connected to with Defendant BRISARD's office.  Still, Plaintiff tried to remain positive and was determined to exceed expectations in her new role.

52.   Yet unfortunately, Defendant BRISARD's harassment continued to intensify.

53.   Meanwhile, over the next month, Defendant BRISARD continued to ask Plaintiff to "hang out" with him after work, often suggesting that they go "work out" or run errands together.

Plaintiff declined Defendant BRISARD's advances each time.

54.    In another attempt to coerce and/or manipulate Plaintiff into a sexual relationship, Defendant BRISARD would often give Plaintiff preferential treatment.

55.    For example, on one occasion, Defendant BRISARD gave Plaintiff an Apple MacBook to use for work, despite the fact that she never asked for one, and every other teacher in the Math Department was given a PC.

56.    Then, in or around the Summer of 2022, Plaintiff was training for the Program Assistant position with Defendant BRISARD **when he randomly pulled on**, **and undid the string on her pants**, **in an attempt to undress her**.

57.    Alarmed, Plaintiff pulled herself away from Defendant BRISARD, told him that his behavior was perverted, and left the office.

58.    Later that day, after returning home from training, Plaintiff gathered the courage to confront Defendant BRISARD about his unrelenting harassment.

59.    Specifically, Plaintiff called Defendant BRISARD, told him that untying her pants made her feel very uncomfortable, and stated that she wanted their interactions to be more professional. Plaintiff also told Defendant BRISARD that she did want him touching her anymore. Defendant BRISARD told Plaintiff that he "understood" her concerns, and promised to behave more appropriately in the future.

60.    However, Defendant BRISARD quickly resumed his inappropriate touching.

61.    For example, in or around September 2022, Defendant BRISARD sat next to Plaintiff at her desk, randomly **lifted her skirt**, **and flicked her bare thigh**.

62.    In shock, Plaintiff inched herself away from Defendant BRISARD and pulled down her skirt. Then, after noticing that Plaintiff's thigh had turned red, Defendant BRISARD flirtatiously

stated Plaintiff, "**So you get red that easily?**"  Plaintiff did not respond and avoided Defendant BRISARD for the rest of the day.

63.   Defendant BRISARD then began to retaliate against Plaintiff for rejecting his sexual advances by becoming inexplicably hostile and aggressive towards her.

64.   For example, in or around October 2022, Plaintiff walked into the P&T Department and asked Defendant BRISARD if there was any work for her to do.

65.   Defendant BRISARD told Plaintiff that there was not.

66.   Therefore, Plaintiff sat at her desk and began grading papers for her other classes.

67.   However, several minutes later, Responded BRISARD approached Plaintiff and shouted, "**You're doing math work while getting paid from me?!**"  Plaintiff responded, "Well you told me that there wasn't any work to do."  Upset that Plaintiff had challenged his retaliatory conduct, Responded BRISARD callously replied, "You need to watch your attitude.  **Asian ladies are submissive**.   **You need to be submissive**."  Plaintiff ignored Responded BRISARD's racist/sexist remark and continued grading her papers.

68.   In further relation, later that month, after rejecting yet another invitation from Defendant BRISARD to "hang out," Defendant BRISARD threatened to remove Plaintiff from his "friends list" if she did not "hang out" with him.

69.   Plaintiff interpreted this to mean that Defendant BRISARD would remove her from the Program Assistant position if she continued refusing his advances.

70.   Then, on or about October 30, 2022, a Sunday, Defendant BRISARD text messaged Plaintiff and asked her to call him.

71.   Plaintiff suspected that this was ill-intentioned, but reluctantly called Defendant BRISARD because he was her supervisor, and feared further retaliation if she refused.

72.   Unfortunately, Plaintiff's suspicion proved to be correct; because once Defendant BRISARD answered the phone, **he asked Plaintiff if he could come to her apartmen**t.

73.   At that time, Plaintiff reasonably believed that allowing Defendant BRISARD to come to her apartment would result in a sexual assault.

74.   However, Plaintiff also believed that failing to appease Defendant BRISARD would negatively impact her employment.

75.   Therefore, Plaintiff told Defendant BRISARD that she only had time to grab a coffee.

76.   Nevertheless, Defendant BRISARD persisted, and asked Plaintiff if she had any food in her apartment to "feed" him.  Plaintiff told Defendant BRISARD that she did not.

77.   Still, Defendant BRISARD insisted that she invite him to her apartment.

78.   Sensing Defendant BRISARD would not take no for an answer, Plaintiff ended the conversation and told him they could try meeting up another time (although she had no intention of doing so).

79.   On or about October 31, 2022, unable to endure further harassment, Plaintiff met with Ms. Houlihan and complained about all of the above-mentioned discriminatory conduct, including Defendant BRISARD's inappropriate touching and sexual advances.

80.   Ms. Houlihan assured Plaintiff that she would address the issue.

81.   However, Defendant BRISARD then began to retaliate against Plaintiff for her complaint of sexual harassment.

82.   For example, on or about November 1, 2022, Plaintiff arrived at work and realized that the password for her computer had been changed.  Defendant BRISARD, who was the only employee with the ability to do this, intentionally changed Plaintiff's password to prevent her from performing her job duties, and create pretextual performance issues against Plaintiff in

order to terminate her employment and/or force her to resign.

83. Then, on or about November 2, 2022, Ms. Houlihan met with Plaintiff to further discuss her complaint.  During their conversation, Plaintiff expressed that she did not feel comfortable working in the same building as Defendant BRISARD, and asked how Defendant NYCDOE would be addressing his unlawful conduct.

84. However, to Plaintiff's dismay, Ms. Houlihan claimed that nothing could be done because, according to her, the school "[**couldn't**] **function without** [**Defendant BRISARD**].

85. Ms. Houlihan also characterized Defendant BRISARD's predatory conduct as "**teasing**."

86. Ms. Houlihan further stated, "I can't fire you because you made the complaint, but I wish you would resign from the position."

87. Plaintiff told Ms. Houlihan that she did not do anything wrong and did not intend to resign.

88. Ms. Houlihan then ended the meeting and assured Plaintiff that a "report" would be made regarding her allegations against Defendant BRISARD.

89. Based on this conversation, Plaintiff realized that Defendant NYCDOE had no intention of remedying the harassment, or protecting her from further harassment.

90. Therefore, later that afternoon, Plaintiff reported Defendant BRISARD's sexual harassment to her teachers' union.

91. Two days later, on or about November 4, 2022, Plaintiff attended a follow-up meeting with Ms. Houlihan and her union representative, Kristen Brehem.

92. During the meeting, Plaintiff reiterated her complaints against Defendant BRISARD.

93. On or about November 7, 2022, Ms. Houlihan informed Plaintiff that moving forward, she would perform all of her Program Assistant duties in the English Department (which had its own separate room/office), to avoid interaction with Defendant BRISARD.

94. However, this change only caused Plaintiff to feel ostracized because she was the only Math Teacher/ Program Assistant working in the English Department, and she suspected that her coworkers had become aware of her allegations against Defendant BRISARD.

95. Therefore, on or about November 18, 2022, Plaintiff contacted Assistant Principal of the Math Department, Mary Minucci, and outlined all of Defendant BRISARD's harassment.

96. After their conversation, Ms. Minucci asked Plaintiff if she would want to perform her Program Assistant duties in *her* office.  Plaintiff accepted Ms. Minucci's offer.

97. Accordingly, on or about November 21, 2022, Plaintiff began performing all of her Program Assistant duties from Ms. Minucci's office.

98. However, on or about February 6, 2023, Ms. Brehem informed Plaintiff that she would no longer be allowed to perform her Program Assistant duties from Ms. Minucci's office.

99. Instead, and in further retaliation for her complaints, Defendant NYCDOE moved Plaintiff to a windowless room in the school library with no electric outlets or internet connections, which has negatively impacted Plaintiff's abilities to perform her job.

100. Since her complaint of sexual harassment, Defendant BRISARD has drastically reduced the amount of work assigned to Plaintiff.

101. Plaintiff has also been forced to continue working in the same building with a man who, among other things, tried to lift her skirt and pull down her pants.

102. Upon information and belief, Defendant NYCDOE has not been disciplined, reprimanded, suspended, nor terminated Defendant BRISARD for the above-mentioned conduct.

103. The above are just some of the examples of the harassment that Plaintiff had to endure, and continues to endure, while working for Defendants.

104. The terms and conditions of Plaintiff's employment were based on her submission to, or

rejection of Defendant BRISARD's sexual advances.

105.    Defendant NYCDOE condoned and/or ratified Defendant BRISARD's discriminatory conduct.

106.    Defendant NYCDOE's actions were, and are, intended to create a hostile work environment that no reasonable person would tolerate.

107.    Defendant NYCDOE's actions were, and are, intended to constructively discharge Plaintiff.

108.    Defendant NYCDOE would not have harassed or discriminated against Plaintiff but for her sex/gender.

109.    Defendant NYCDOE would not have retaliated against Plaintiff but for her complaints of sexual harassment against Defendant BRISARD,

110.    As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

111.    As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

112.    As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

113.    As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

114.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Complainant demands punitive damages as against all Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**UNDER TITLE VII**
**DISCRIMINATION**
**(Against Defendant NYCDOE Only)**

115.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendants.  Plaintiff complains of Defendant NYCDOE's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, together with creating a hostile work environment, and sexual harassment.

117.   Defendant NYCDOE engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment, and sexual harassment.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**RETALIATION**
**(Against Defendant NYCDOE Only)**

118.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

119.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

120.    Defendant NYCDOE engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to Defendant BRISARD's discriminatory conduct.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**DISCRIMINATION**

121.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

122.    Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

123.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender, together with creating a hostile work environment, and sexual harassment.

124.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**RETALIATION**

125.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

126.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

14

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

127.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of her opposition to Defendant BRISARD's discriminatory conduct.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

128.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

129.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived … gender … to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

130.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex/gender, together with creating a hostile work environment, and sexual harassment.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

131.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

132.    The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

133.   Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to Defendant BRISARD's discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully request a judgment against the Defendants:

A.   Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York Executive Law, and the New York City Administrative Code and that the Defendants discriminated against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment, sexual harassment, and retaliation;

B.   Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

      **WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in

an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees,

costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: January 25, 2024
      New York, New York

           **PHILLIPS AND ASSOCIATES, PLLC**
           *Attorneys for Plaintiff*

      By: _/s/ Max C. Bracero, Esq._
           Max C. Bracero, Esq.
           45 Broadway, Suite 430
           New York, NY 10006
           Tel: (212) 248-7431
           Fax: (212) 901-2107